## SCIENTER

37.     As a result of defendants' materially misleading statements and failures to disclose the truth about Hemopure's prospects for approval by the FDA, Biopure common stock traded at artificially inflated prices during the entire Class Period, until the time the adverse information described above was finally provided to and digested by the securities markets. Plaintiff and other members of the Class purchased or otherwise acquired Biopure common stock relying upon the integrity of the market price of Biopure stock and market information relating to Biopure, or in the alternative, upon defendants' misleading statements, and in ignorance of the adverse, undisclosed information known to defendants, and have been damaged thereby.

38.     In making the false and misleading statements and omissions of fact, and by engaging in the fraudulent scheme described herein, defendants acted with scienter. Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading. Defendants also knew that such statements or documents would be issued or disseminated to the investing public. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

39.     As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding the likelihood of obtaining FDA approval to market Hemopure, participated in the fraudulent scheme alleged herein.

40.     The Individual Defendants had actual knowledge of the FDA's negative reaction to Biopure's BLA for Hemopure and misrepresented and failed to disclose the true facts concerning the likelihood of receipt of FDA approval.

15

41. Defendants were motivated to engage in a scheme to inflate the price of Biopure securities in order to: (i) allow defendant Rausch to profit from illicit insider trading; and (ii) enable Biopure to raise $17 million in a private placement.

**Insider Trading**

42. During the Class Period, defendant Rausch sold approximately 246,574 shares of Biopure common stock at artificially inflated prices prior to the disclosure of the adverse information about the FDA's review of the Company's Hemopure's applications. Defendant Rausch's stock sales during the Class Period are as follows:

| Transaction Date | Shares Sold | Transaction Price | Gross Sale Proceeds |
|---|---|---|---|
| 04/15/03 | 30,000 | $3.130 | $93,900.00 |
| 06/05/03 | 200 | $6.060 | $1,212.00 |
| 06/05/03 | 1,800 | $6.070 | $10,926.00 |
| 06/24/03 | 1,000 | $5.580 | $5,580.00 |
| 06/24/03 | 1,000 | $5.647 | $5,647.00 |
| 06/24/03 | 1,000 | $5.698 | $5,698.00 |
| 06/25/03 | 500 | $5.900 | $2,950.00 |
| 06/25/03 | 200 | $5.970 | $1,194.00 |
| 06/25/03 | 1,700 | $5.800 | $9,860.00 |
| 06/25/03 | 200 | $5.801 | $1,160.20 |
| 06/25/03 | 100 | $5.803 | $580.30 |
| 06/26/03 | 8,500 | $5.800 | $49,300.00 |
| 06/26/03 | 1,500 | $5.810 | $8,715.00 |
| 06/26/03 | 20,000 | $5.850 | $117,000.00 |
| 06/26/03 | 4,374 | $5.900 | $25,806.60 |
| 06/27/03 | 7,400 | $5.950 | $44,030.00 |
| 06/27/03 | 2,600 | $5.960 | $15,496.00 |
| 06/27/03 | 10,000 | $6.000 | $60,000.00 |
| 06/30/03 | 4,200 | $6.140 | $25,788.00 |
| 06/30/03 | 800 | $6.160 | $4,928.00 |
| 08/05/03 | 2,100 | $7.500 | $15,750.00 |
| 08/05/03 | 6,700 | $7.510 | $50,317.00 |
| 08/05/03 | 400 | $7.520 | $3,008.00 |
| 08/05/03 | 800 | $7.530 | $6,024.00 |
| 08/06/03 | 1,300 | $7.500 | $9,750.00 |

| Date | Shares | Price | Total |
|---|---|---|---|
| 08/06/03 | 700 | $7.540 | $5,278.00 |
| 08/07/03 | 8,000 | $7.000 | $56,000.00 |
| 08/08/03 | 1,600 | $7.050 | $11,280.00 |
| 08/08/03 | 300 | $7.060 | $2,118.00 |
| 08/08/03 | 100 | $7.130 | $713.00 |
| 08/08/03 | 100 | $7.140 | $714.00 |
| 08/08/03 | 3,300 | $7.150 | $23,595.00 |
| 08/08/03 | 300 | $7.160 | $2,148.00 |
| 08/08/03 | 500 | $7.170 | $3,585.00 |
| 08/08/03 | 1,800 | $7.190 | $12,942.00 |
| 08/08/03 | 1,800 | $7.250 | $13,050.00 |
| 08/08/03 | 200 | $7.280 | $1,456.00 |
| 08/12/03 | 7,600 | $7.000 | $53,200.00 |
| 08/12/03 | 200 | $7.010 | $1,402.00 |
| 08/12/03 | 200 | $7.020 | $1,404.00 |
| 08/12/03 | 2,000 | $7.150 | $14,300.00 |
| 08/13/03 | 1,000 | $7.020 | $7,020.00 |
| 08/13/03 | 3,100 | $7.030 | $21,793.00 |
| 08/13/03 | 600 | $7.040 | $4,224.00 |
| 08/13/03 | 3,000 | $7.050 | $21,150.00 |
| 08/13/03 | 300 | $7.060 | $2,118.00 |
| 08/13/03 | 300 | $7.070 | $2,121.00 |
| 08/13/03 | 700 | $7.080 | $4,956.00 |
| 08/13/03 | 500 | $7.150 | $3,575.00 |
| 08/28/03 | 100,000 | $7.500 | $750,000.00 |
| **TOTALS** | 246,574 | | $1,594,762.10 |

43.     Notwithstanding his duty to refrain from trading Biopure stock under these circumstances, or to disclose the insider information prior to trading, Rausch sold, prior to disclosure of the material adverse facts described above, shares of Biopure stock at prices that had been artificially inflated by defendants' materially false representations and material omissions. Rausch's stock trades during the Class Period were unusual and suspicious in timing and amount, because they were cluster in the period when the Company was receiving undisclosed and materially negative feedback from the FDA, but before the FDA's position was

17

made public.

**Private Placement**

44.     Defendants were also motivated to inflate the price of Biopure's common stock in order to sell over $17 million of stock in a private placement. On July 23, 2003, defendants announced that Biopure had raised $17.2 million in gross proceeds through the sale of 3,083,000 shares of its common stock at $5.58 per share (the "July 23, 2003 Press Release"). According to the July 23, 2003 Press Release, "The company intends to use the estimated net proceeds of approximately $16.2 million for general corporate purposes, including capital expenditures and to meet working capital needs."

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class consisting of all persons or entities that purchased common stock of Biopure on the open market during the Class Period March 5, 2003 through December 24, 2003. Excluded from the Class are the defendants herein, members of their immediate families, any subsidiary, affiliate, or control person of any such person or entity, officers and directors of Biopure and the legal representatives, heirs, successors or assigns of any such excluded party.

46.     The members of the Class are so numerous that the joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are, at a minimum, over one thousand members of the Class. During the Class Period, the Company reported that it had approximately 44,378,466 shares of its common stock outstanding. The

holders of these shares are believed to be geographically dispersed throughout the United States. Biopure common stock is listed and actively traded on the NASDAQ National Market System, widely recognized as an efficient market. During the Class Period, millions of shares of Biopure common stock were traded.

47. Plaintiff's claims are typical of the claims of the Class, as plaintiff purchased common shares of Biopure on the open market during the Class Period and sustained damages arising out of defendants' conduct in violation of federal law as complained of herein.

48. Plaintiff will fairly and adequately protect the interests of the members of the Class, and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the Class they represent.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class that predominate over any questions affecting individual members of the Class are:

(i) whether defendants violated Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder;

(ii) whether defendants participated in and pursued the common course of conduct complained of herein;

(iii) whether documents, filings, releases and statements disseminated to the investing public, during the Class Period, omitted and/or misrepresented material facts about the Company;

19

(iv) whether the market price of Biopure's common stock during the Class Period was artificially inflated due to the nondisclosures and/or misrepresentations complained of herein;

(v) whether defendants acted knowingly, willfully, or recklessly in omitting to state and/or misrepresenting material facts; and

(vi) whether the members of the Class have sustained damages and, if so, what is the proper measure of such damages.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FRAUD ON THE MARKET PRESUMPTION

51. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

i) defendants made public misrepresentations or failed to disclose material facts during the Class Period;

ii) the omissions and misrepresentations were material;

iii) the securities of the Company traded in an efficient market;

iv) Biopure traded on the NASDAQ National Market System and was followed by analysts, including, ThinkEquity Partners. The price of Biopure's stock reflected the effect of news disseminated in the market;

20

    v)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    vi)    plaintiff and members of the Class purchased their Biopure stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

52.    Based upon the following, plaintiff and members of the Class are entitled to the presumption of reliance upon the integrity of the market.

## NO STATUTORY SAFE HARBOR

53.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements pleaded in this Complaint, because none of the statements pleaded herein were identified as "forward-looking statements" when made. Nor did meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements accompany those statements. To the extent that the statutory safe harbor does apply to any statements pleaded herein deemed to be forward-looking, the defendants are liable for those false forward-looking statements, because at the time each of those statements was made the speaker actually knew the forward-looking statement was false and/or the statement was authorized and/or approved by an executive officer of the Company, who actually knew that those statements were false when made.

## PLAINTIFF'S INVESTIGATION

54.    Plaintiff's information and belief are based upon, among other things, his and/or counsel's investigation, which included without limitation: (a) review and analysis of filings made by Biopure with the SEC; (b) review and analysis of press releases and other publications

disseminated by certain of the defendants; (c) review of news articles and shareholder communications concerning Biopure; and (d) review of other publicly available information concerning Biopure. Plaintiff believes that further substantial evidentiary support will exist for the allegations herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to defendants or are within their control.

## COUNT I

### VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentation and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

   a. Employed devices, schemes and artifices to defraud;

   b. Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

   c. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with

their purchases of Biopure publicly traded securities during the Class Period.

58. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Biopure's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Biopure as specified herein.

60. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Biopure's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Biopure and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Biopure securities

during the Class Period.

61.    Defendants Moore's and Rausch's primary liability, and controlling person liability, arises from the following facts: (i) Moore and Rausch were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) by virtue of their responsibilities and activities as senior officers and/or directors of the Company were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, studies, projections and/or reports; (iii) Moore and Rausch enjoyed significant personal contact and familiarity with other officers and directors and were advised of and had access to other members of the Company's management term, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) Moore and Rausch were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

62.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts, even though such facts were available to him. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purposes and effect of concealing Biopure's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements and omissions of the Company's business, operations and FDA applications throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to

24

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false and misleading.

63.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Biopure's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Biopure's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendant, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Biopure securities during the Class Period at artificially high prices and were damaged thereby.

64.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Biopure was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Biopure securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.     By virtue of the foregoing, defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## COUNT II

### VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS

67.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

68.     The Individual Defendants, by virtue of their positions, stock ownership and specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

69.     The Individual Defendants had the power and influence and exercised the same to cause Biopure to engage in the illegal conduct and practices complained of herein.

70.     By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Biopure common stock during the Class Period.

## PRAYER FOR RELIEF

1.     Determining that the instant action is a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding compensatory damages and/or rescission as appropriate against defendants, in favor of plaintiff and all members of the Class for damages sustained as a result of defendants' wrongdoing.

3.     Awarding plaintiff and members of the Class the costs and disbursements of this

suit, including reasonable attorneys', accountants' and experts' fees; and

    4.    Awarding such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 8, 2004

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

*/s/ Patrick J. Egan*

Jeffrey C. Block, BBO # 600747
Patrick T. Egan, BBO # 637477
One Liberty Square, 8th Floor
Boston, Massachusetts 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Steven J. Toll, Esq.
Julie Goldsmith, Esq.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

**COUNSEL FOR PLAINTIFF**

# PLAINTIFF'S CERTIFICATION OF SECURITIES FRAUD CLASS ACTION COMPLAINT

I, MICHAEL E. CRIDEN, INDIVIDUALLY AND AS PRESIDENT OF 2 WEST INC., hereby certify that the following is true and correct to the best of my knowledge, information and belief;

1. I have reviewed the complaint filed herewith in the captioned action (the "Complaint"), and have authorized the filing thereof.

2. I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial, if necessary.

3. I purchased 1,500 shares of the common stock of BioPure Corp. on July 11, 003, at $6.80 per share.

4. I sold 1,500 shares of the common stock of BioPure Corp. on December 19, 2003 at $2.32 per share.

5. I did not purchase these securities at the direction of my counsel, or in order to participate in any private action arising under the Securities Exchange Act of 1934.

6. During the three year period preceding the date of my signing the Certification, I have not served as a representative in any action arising under the Securities Exchange Act of 1934.

7. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

Signed under the penalties of perjury this __ day of January 6, 2004.

*Michael E. Criden*
MICHAEL E. CRIDEN